FILED

10/02/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0476

DA 18-0476

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 248

STATE OF MONTANA,

       Plaintiff and Appellee,

   v.

JESSE DAVID SEDLER,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 17-59
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Chad Wright, Appellate Defender, Helena, Montana

      For Appellee:

         Timothy C. Fox, Montana Attorney General, Madison L. Mattioli, Assistant
Attorney General, Helena, Montana

         Marcia Boris, Lincoln County Attorney, Libby, Montana

               Submitted on Briefs:  August 5, 2020

                       Decided:  October 2, 2020

Filed:

                     _____
                           Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Defendant and Appellant Jesse David Sedler (Sedler) appeals from the Judgment and Sentence entered on June 22, 2018, by the Nineteenth Judicial District Court, Lincoln County, and challenges the constitutionality of the petition process set forth in § 46-23-506(2)(a) and (3)(a), MCA, for an offender to be relieved of the requirement to register as a violent offender.

¶2      We restate the issue on appeal as follows:

> *Whether the petition requirement set forth in § 46-23-506(3)(a), MCA, applicable to violent offenders required to register for a ten-year period, unfairly extends the maximum time a violent offender must be on the registry such that it violates substantive due process rights and is facially unconstitutional.*

¶3      We reverse and remand to the district court to vacate Sedler's conviction and dismiss the failure to register charge against him with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      In September 2002, Sedler was convicted of assault with a weapon for allegedly hitting his neighbor with a stick. Due to his mental health problems, he was sentenced to ten years in Department of Health and Human Services (DPHHS) custody. In February 2004, Sedler's DPHHS sentence was amended to a suspended sentence, and he was released. Prior to release, Sedler registered as a violent offender. He then remained offense free and maintained his registration on the violent offender registry (VOR) until 2015. In November 2016—fourteen years after his original conviction—Sedler's neighbor, a deputy sheriff, reported Sedler to be non-compliant with the VOR. In March 2017, Sedler was

2

charged with failure to register as a violent offender under § 46-23-504 and -507, MCA. The charges were refiled in June 2017 after the prosecutor agreed they should be severed from two pending charges related to a separate incident. Sedler signed a plea agreement on April 6, 2018. On that same day, he filed a petition with the District Court to relieve him of the duty to register. The State responded that it had no legal basis on which to oppose the petition. The court granted the petition on April 11, 2018. On April 17, 2018, Sedler reluctantly entered an *Alford* plea to the failing to register as a violent offender charge, asserting that a jury could find him guilty of the offense due to "a technical bias against me that we can't overcome with the way things are going." On June 18, 2018, sixteen years after his initial conviction and nearly two years after his neighbor reported him non-compliant with the VOR, Sedler was sentenced to a five-year commitment to the Department of Corrections, all suspended, for the failure to register offense. The severed charges were dismissed with prejudice. On August 13, 2018, Sedler filed a pro se appeal. This Court appointed Sedler counsel. Sedler challenges the constitutionality of being sentenced for a failure to register offense, asserting the petitioning process applicable to all § 46-23-506(2)(a), MCA, offenders—those required to register for ten years—is facially invalid, violates substantive due process rights, and is unconstitutional.[1]

---

[1] This petitioning process is separate and distinct from the petitioning process required of § 46-23-506(2)(b), MCA, for those required to register for life by virtue of being convicted of a registration violation or felony during the ten-year period post-release from confinement or, if no confinement, post-sentencing.

3

## STANDARD OF REVIEW

¶5 With respect to questions of constitutional law, this Court's review is plenary, and we examine the district court's interpretation of the law for correctness. *See State v. Egdorf*, 2003 MT 264, ¶ 12, 317 Mont. 436, 77 P.3d 517; *State v. Bedwell*, 1999 MT 206, ¶ 4, 295 Mont. 476, 985 P.2d 150; *In re S.L.M.*, 287 Mont. 23, 32, 951 P.2d 1365, 1370 (1997). "In reviewing constitutional challenges to legislative enactments, the constitutionality of a legislative enactment is *prima facie* presumed, and every intendment in its favor will be made unless its unconstitutionality appears beyond a reasonable doubt." *Egdorf*, ¶ 12 (internal quotations omitted). Thus, the party challenging a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt and, if any doubt exists, it must be resolved in favor of the statute. *Egdorf*, ¶ 12; *State v. Price*, 2002 MT 229, ¶¶ 27-28, 311 Mont. 439, 57 P.3d 42.

## DISCUSSION

¶6 *Whether the petition requirement set forth in § 46-23-506(3)(a), MCA, applicable to violent offenders required to register for a ten-year period, unfairly extends the maximum time a violent offender must be on the registry such that it violates substantive due process rights and is facially unconstitutional.*

¶7 Section 46-23-506, MCA, prescribes the period of time a violent offender must register. Under this statute, a violent offender is required to register either for a period of ten years or for life—depending on whether the offender has been convicted of a registration violation or a felony during the ten-year period post-release from confinement or, if no confinement, from sentencing. If the offender has not been convicted of a registration violation or felony during this ten-year period, the offender is required to

register for ten years, after which she or he may petition to be relieved of the requirement. *See* § 46-23-506(2)(a), MCA. If an offender is convicted of a registration violation or felony during this ten-year period, the offender is required to register for life, but may petition to be relieved of the requirement. *See* § 46-23-506(2)(b), MCA. The petition process associated with offenders required to register for ten years is ministerial and vastly different than the judicial determination requiring discretionary considerations that applies to offenders required to register for life. *See* § 46-23-506(3), MCA.

¶8      Here, Sedler was charged with failing to register as a violent offender two years after the maximum time he was required to be on the VOR pursuant to § 46-23-506(2)(a), MCA, (1997).[2] Sedler asserts the petitioning process to be relieved of the requirement to register as a violent offender for an offender with a ten-year registration requirement as provided for in § 46-23-506(2)(a) and (3)(a), MCA (2005)— added to the statute in 2005 and applied to him in this case—is arbitrary and capricious, facially invalid, violates substantive due process rights, and is thus unconstitutional. Although Sedler could have been clearer in his briefing, it appears he is asserting a facial challenge to the statutory petition process set forth in § 46-23-506(3)(a), MCA, which requires an offender required to register for ten years post-release from confinement or, if no confinement,

---

[2] The relevant subsections of the 2001 version of the statute in effect at the time Sedler was charged, convicted, and sentenced on his original violent offense were unchanged from the 1997 amendments to the statute.

post-sentencing, to file a petition to be relieved of the requirement to register.[3] Sedler asserts we should undertake plain error review as the petition process contained in § 46-23-506(2)(a) and (3)(a), MCA, is facially invalid or void and failing to review it will result in a manifest miscarriage of justice. Sedler asserts the legislative history of § 46-23-506, MCA, explains how the process to be removed from the requirement to register as a violent offender has turned into an arbitrary and capricious requirement. Further, Sedler asserts the petition process violates substantive due process as it is not reasonably related to the goal of the VOR nor does it promote community safety.

¶9 The State asserts that as Sedler pleaded guilty and received the benefit of a plea bargain, he waived his right to appeal and that Sedler has failed to meet his burden of establishing that failure to exercise plain error review would result in a manifest miscarriage of justice, leave unsettled the fundamental fairness of the trial process, or compromise the integrity of the judicial proceedings. The State further asserts that even if this Court undertakes plain error review, Sedler has failed to establish the petition process is unconstitutional as it is reasonably related to the "goal of promoting public safety by

---

[3] The State claims that Sedler raises an as-applied challenge to the petition requirement because Sedler does not show § 46-23-506(3)(a), MCA, can never be constitutional and the State may not enforce the statute under any circumstances. Rather, the State alleges Sedler argues the petition requirement is unconstitutional in this situation. We disagree. Sedler challenges the validity of the petition process applicable to all offenders with a ten-year registration requirement under any circumstances, maintaining the petition process is not rationally related to the State's expressed goals of enhancing community safety.

6

providing the public with accurate information about offenders who pose a greater risk to the public."

¶10 Generally, an appellate court does not address issues raised for the first time on appeal. *See State v. Akers*, 2017 MT 311, ¶ 10, 389 Mont. 531, 408 P.3d 142; *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126. Plain error review is an exception to this general rule where we may consider issues raised for the first time on appeal. *Akers*, ¶ 10; *Favel*, ¶ 13. Courts invoke plain error review to correct error not objected to at the lower court level but that affects the fairness, integrity, and public reputation of judicial proceedings. *Akers*, ¶ 10; *State v. Finley*, 276 Mont. 126, 134, 915 P.2d 208, 213 (1996). To reverse a decision for plain error, the appellant must: (1) demonstrate that the claimed error implicates a fundamental right; and (2) firmly convince this Court that a failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Akers*, ¶ 10; *Favel*, ¶ 23.

¶11 As noted by Sedler, we have exercised plain error review where illegal plea provisions are at issue, such that participation in plea negotiations and failing to object to the conviction itself does not necessarily foreclose review of illegal provisions of the sentence or conviction. *See State v. Langley*, No. DA 17-0730, Order (Mont. Nov. 12, 2019); *State v Hansen*, 2017 MT 280, 389 Mont. 299, 405 P.3d 625. "A defendant's facial constitutional challenge is based on the defendant's allegation that the *statute* upon which his sentence was based is unconstitutional—i.e. his sentence is illegal." *State v Coleman*,

2018 MT 290, ¶ 9, 393 Mont. 375, 431 P.3d 26. Facial constitutional challenges to sentencing statutes are addressed even if they are raised for the first time on appeal. *Coleman*, ¶ 9. Sedler's challenge to the petition process for offenders with a ten-year registration requirement contained in § 46-23-506(3)(a), MCA, is similar to a challenge of a sentencing statute rather than merely an objectionable condition within a valid sentence. If the petition process for offenders with a ten-year registration requirement contained in § 46-23-506(3)(a), MCA, is facially unconstitutional, Sedler would have been immune from prosecution or sentence for failure to register as a violent offender as he had no requirement to register beyond the ten years after his release from DPHHS custody and the current conviction and sentence would be illegal. An illegal conviction and sentence is itself a manifest miscarriage of justice, fundamentally unfair, and compromises the integrity of the judicial process. Thus, we conclude review of Sedler's facial constitutional challenge based on violation of substantive due process rights is warranted.

¶12 We now turn to whether the petition process applicable to all offenders with a ten-year registration requirement to be relieved from registration as a violent offender contained in § 46-23-506(3)(a), MCA, violates substantive due process and is facially unconstitutional.

¶13 In 1995, through House Bill 214, the Legislature amended the title of the Sexual Offender Registration Act to the Sexual or Violent Offender Registration Act (SVORA) and extended registration requirements to not only sexual offenses but to a small group of violent crimes, including assault with a weapon, and made registration as a violent offender

8

a lifetime requirement. Section 46-23-506(1), MCA (1995). At that time, there was a petition process which provided an offender a potential means to be relieved from registration by filing a petition for such.[4] The statute required the county attorney and the victim to be notified of the petition. The district court was granted discretion to grant or deny the petition upon consideration and balancing of the offender's postconviction law-abiding conduct, public safety, and the best interests of society. Section 46-23-506(2), MCA (1995).

¶14 In 1997, the Legislature separated out the relief from registration requirements for violent and sexual offenders:

> **46-23-506. Duration of registration.** (1) A *sexual offender* required to register under this part shall register for the remainder of the offender's life, except as provided in subsection (3) or during a period of time during which the offender is in prison.
> (2) A *violent offender* required to register under this part shall register:
> (a) for the 10 years following release from confinement or, if not confined following sentencing, for the 10 years following the conclusion of the sentencing hearing; or
> (b) if convicted during the 10-year period provided in subsection (2)(a) of failing to register or keep registration current or of a felony, for the remainder of the offender's life unless relieved of the duty to register as provided in subsection (3).

Section 46-23-506(1)-(2), MCA, (1997) (emphasis added). Pursuant to this statute, upon an offender not being convicted of failing to register or of a felony offense for ten years

---

[4] From the statutory language it was not clear that a violent offender could petition for relief from registering as a violent offender as the statute provided the offender could petition ten years after "the offender's last conviction of a sexual assault." Section 46-23-506(2), MCA (1995).

post-release from confinement or sentencing, the registration requirement automatically ended without any petitioning requirement. This version of the statute was in effect at the time Sedler was sentenced on his original violent offense. Thus, Sedler had a reasonable expectation he did not need to continue registering as a violent offender upon expiration of ten years after he was released from DPHHS custody if he maintained his registration and incurred no felony conviction.

¶15 In 2005, the Legislature amended § 46-23-506, MCA, again adding a petition process to obtain release from the requirement to register as a violent offender. Unlike the prior petition process existing in 1995, if the offender had a ten-year registration requirement, which had expired, the district court had no discretion to deny the petition under the 2005 amendments.[5] *See* § 46-23-506(3)(a), MCA (2005). Expiration of the ten years was in itself the determinant condition for relief from registration for offenders with a ten-year registration requirement. This petitioning process has not been further amended since its enactment in 2005.

¶16 Over three years after expiration of Sedler's registration requirement and over fourteen years after his original violent conviction, Sedler was charged with the offense of failing to register as a violent offender. Sedler asserts pursuant to § 46-23-506(2)(a), MCA,

---

[5] A different, discretionary petition process requiring court consideration and discretion is provided for offenders with a lifetime registration requirement—which includes those convicted of a registration violation or felony conviction withing the ten-year period post-release from confinement or, if no confinement, post-sentencing.

he was only required to register for a period of ten years post his release from DPHHS custody—as he had no registration or felony convictions during that time. As of February 2014, but for the petition process, he would not be subject to prosecution or conviction of a failure to register offense. Sedler asserts and the State does not dispute, as he was only required to register for the ten-year period post his release from DPHHS custody, this offense was occasioned solely by the petition process enacted by the Legislature and codified in § 46-23-506(2)(a) and (3)(a), MCA (2005). Finally, Sedler asserts that as there is no discretion to deny a petition to relieve an offender required to register for ten years pursuant to § 46-23-506(2)(a), MCA, the statutory petition process is arbitrary and capricious, does not reasonably relate to the Legislature's goal of public safety, and violates substantive due process.

¶17 Sedler does not argue this case involves the State infringing on a fundamental right. "Where a fundamental right is not implicated, '[s]ubstantive due process analysis requires a test of the reasonableness of a statute in relation to the State's power to enact legislation.'" *Mont. Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 21, 382 Mont. 256, 368 P.3d 1131 (quoting *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 33, 353 Mont. 265, 222 P.3d 566). In *State v. Egdorf*, we set forth the legal framework for consideration of substantive due process issues:

> Both the Fourteenth Amendment to the United States Constitution and Article II, section 17 of the Montana Constitution provide that no person shall be deprived of life, liberty, or property without due process of law. The guarantee of due process has both a procedural and a substantive component . . . Substantive due process bars arbitrary governmental actions regardless

11

of the procedures used to implement them and serves as a check on oppressive governmental action.

> The theory underlying substantive due process reaffirms the fundamental concept that the due process clause contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them, and serves as a check on oppressive governmental action. . . . Substantive due process primarily examines underlying substantive rights and remedies to determine whether restrictions are unreasonable or arbitrary when balanced against the purpose of the legislature in enacting the statute.

*Egdorf*, ¶ 19 (quoting *Newville v. State, Dept. of Family Services*, 267 Mont. 237, 249, 883 P.2d 793, 800 (1994)) (internal citations omitted) (second alteration in original).

> A substantive due process analysis requires a test of reasonableness of a statute in relation to the State's power to enact such legislation. The essence of substantive due process is that the State cannot use its police power to take unreasonable, arbitrary or capricious action against an individual. In order to satisfy substantive due process guarantees, a statute enacted under a state's police power must be reasonably related to a permissible legislative objective.

*State v. Webb*, 2005 MT 5, ¶ 22, 325 Mont. 317, 106 P.3d 521 (quoting *Egdorf*, ¶ 21) (internal quotation omitted). "To prevail on a facial challenge, the party making the challenge must show that 'no set of circumstances exists' under which the statute would be valid or that the statute lacks any 'plainly legitimate sweep.'" *In re S.M.*, 2017 MT 244, ¶ 10, 389 Mont. 28, 403 P.3d 324 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1198, 1190 (2008)); *see also Mont. Cannabis Indus. Ass'n*, ¶ 14.

¶18 In this case, Sedler asserts the petitioning process applicable to offenders required to register for a ten-year period post-release from confinement or, if no confinement,

12

post-sentencing, which requires the filing of a petition as provided in § 46-23-506(2)(a) and (3)(a), MCA, to obtain a purely ministerial act, violates substantive due process by needlessly extending the VOR registration beyond ten years. The State contends the registration is related to the legitimate goals of public safety such that it "is reasonable for the Legislature to require Sedler to petition and involve the district court in the decision of whether to remove him from the violent offender registry."[6] While we agree the legislative goal for registration is based on community safety and registration for a particular period may reasonably be related to the goal of community safety, we do not agree the petition process required enhances public safety.[7] For offenders with a ten-year registration requirement, the legislative history of the SVORA does not support that the particular petition process now existing furthers any of the legislative goals set forth in the Act's preamble. As pointed out by Sedler, "In 1997, when the preamble on which the State so heavily relies was issued, there was no removal petitioning requirement . . . . The 10-year registry period for violent offenders . . . ended after 10 years without any petitioning requirement." (Footnote and emphasis omitted.) Under the current petition process for

---

[6] The State also suggests this Court has reviewed and approved the removal petition requirement in *State v. Brooks*, 2012 MT 263, 367 Mont. 59, 289 P.3d 105. In *Brooks*, the defendant challenged the constitutionality of the SVORA, arguing it violated his right to privacy. With regard to the defendant's right to privacy we concluded the SVORA was narrowly tailored. We were not asked to consider the constitutionality of the petition process itself and did not do so.

[7] Ideally, violent offenders should be required to register for the period of time in which they are most likely to recidivate or re-offend based on reliable data regarding violent offender recidivism and re-offense.

offenders required to register for a ten-year period, the district court retains no discretion as to whether to remove an offender from the registration requirement—removal is purely ministerial. The State tracks offenders and has the ability to know which offenders are required to register for ten years and which offenders are required to register for life.[8] There is no legitimate reason to require an offender to petition to obtain a purely ministerial act in the absence of which he is subject to additional criminal penalties. The petition requirement lacks a plainly legitimate sweep. Filing a petition does nothing to enhance community safety but instead is an unreasonable, arbitrary, and capricious procedural roadblock which needlessly extends an offender's registration and inappropriately subjects an offender to prosecution for failure to register during the extended time. We conclude the petition process applicable to offenders required to register for a ten-year period is not reasonably related to assuring public safety and is an unconstitutional provision of an otherwise legitimate act.

## CONCLUSION

¶19 The petition process requiring an offender subject to a ten-year registration requirement to file a petition to be removed from the requirement to register as a violent offender set forth in § 46-23-506(2)(a) and (3)(a), MCA, is an unconstitutional provision

---

[8] The State has the ability to track offenders required to register for commission of new offenses, misdemeanor or felony, similar to how it tracks probationers, parolees, and those under a deferred imposition of sentence. Further, the State has clearly shown the ability to relieve offenders from their incarceration, parole, probation, or deferred imposition of sentence status without requiring offenders to bring a petition for these ministerial acts.

in an otherwise legitimate act. As such, it is appropriate to reverse Sedler's conviction for failing to register as a violent offender and remand the matter to the district court to vacate his conviction for failing to register and dismiss the charge against Sedler with prejudice.

¶20 Reversed and remanded.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ DIRK M. SANDEFUR
/S/ LAURIE McKINNON

Justice Jim Rice dissenting.

¶21 Under the rules governing appellate review, and these particular circumstances, I do not believe it is prudent for the Court to reach the constitutional challenge raised for the first time on appeal. Then, on the merits of the constitutional issue and this record, I would not strike down the statute as facially unconstitutional under the standards governing application of substantive due process.

¶22 The failure to raise an issue in the District Court is often referred to, both colloquially and in court opinions, as a "waiver" of the issue for purposes of appellate review. *See State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72 ("The failure to preserve an assertion of error by contemporaneous objection generally waives the right to subsequent appellate review."). When necessary, we have explained the distinction between this failure to act, which is technically a forfeiture, and a true waiver made upon

15

a party's intentional act. *See In re the Petition to Transfer Territory from Poplar Elementary Sch. Dist. No. 9 to Froid Elementary Sch. Dist. No. 65*, 2015 MT 278, ¶ 14, 381 Mont. 145, 364 P.3d 1222 ("We previously noted the distinction between failing to preserve an issue, or 'forfeiture,' and 'waiver' of an issue, in *Miller v. Eighteenth Jud. Dist. Ct.*, 2007 MT 149, ¶ 46, n.5, 337 Mont. 488, 162 P.3d 121 ("'Forfeiture,' as opposed to 'waiver,' is the correct term in this context, since 'forfeiture' refers to 'the failure to make the timely assertion of a right,' whereas 'waiver' concerns 'the intentional relinquishment or abandonment of a known right.'")"). This Court may undertake review of forfeited issues pursuant to the plain error doctrine, which is a "narrow exception" to the rule requiring issues to be raised in the district court to preserve them for appeal, to be exercised "only under extraordinary circumstances" as necessary to protect a fundamental constitutional right and the fundamental fairness of the proceeding, or "the integrity of the judicial process." *Trujillo*, ¶ 6. Here, Sedler did not raise and thus forfeited the issue of the constitutionality of the statute under which the case proceeded against him to judgment. "The basis for the general rule is that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider." *State v. Johns*, 2019 MT 292, ¶ 12, 398 Mont. 152, 454 P.3d 692 (internal quotes and citation omitted).

¶23 More, Sedler forfeited the issue in order to use the statute to leverage legal advantage. In March 2017, Sedler was charged with a new violent offense, assault with a weapon, a felony, and with a misdemeanor unauthorized use of a motor vehicle. It was

alleged that Sedler took a neighbor's vehicle without permission and, when confronted, smashed a beer bottle over the neighbor's head. As a violent offender under a requirement to register, and facing a new violent felony charge, Sedler found himself in a pickle. Had he challenged the constitutionality of the registration statute before the District Court and prevailed, he would nonetheless still have faced new charges, including another violent felony charge. Instead of challenging the registration statute, Sedler promised to plead guilty to the registration offense in exchange for the State dismissing the two new pending charges. The advantage to the State was being able to maintain supervision over an individual with a violent record, while alleviating the burden of trying new charges.

¶24 Sedler entered a guilty plea[1] to the registration charge, the voluntariness and intentionality of which is not challenged on appeal. Thus, in addition to forfeiting the issue, Sedler also intentionally waived the issue to gain something in return. The consequences of Sedler's intentional act are clear under our precedent:

> [A] defendant waives the right to appeal all nonjurisdictional defects upon voluntarily and knowingly entering a guilty plea, *including claims of constitutional violations* which may have occurred prior to the plea. *State v. Violette*, 2009 MT 19, ¶ 16, 349 Mont. 81, 201 P.3d 804. Consequently, after the plea, the defendant *may attack only* the voluntary and intelligent character of the plea, any jurisdictional defects, and any specified adverse pretrial rulings he has reserved the right to appeal.

---

[1] Sedler's Alford plea was a guilty plea. *Lawrence v. Guyer*, 2019 MT 74, 395 Mont. 222, 440 P.3d 1.

17

*State v. Pavey*, 2010 MT 104, ¶ 11, 356 Mont. 248, 231 P.3d 1104 (internal quotations omitted) (emphasis added).[2]  In *Pavey*, the Defendant attempted to raise the denial of speedy trial on appeal, a constitutional issue.  We rejected the effort, reasoning, "[t]he alleged violation of the right to a speedy trial is a nonjurisdictional-defect claim."  *Pavey*, ¶ 11 (citation omitted).  There is no plain error review of such waivers because there is no error; it is a defendant's choice.  Thus, Sedler did more than Pavey:  he forfeited the constitutional challenge to the statute by not raising it, used the statute to secure an advantageous plea deal, and intentionally waived all issues except jurisdictional ones.  For good measure, we could also note that Sedler failed to reserve the constitutional issue as part of his plea, which is necessary to preserve the issue for appeal under § 46-12-204(3), MCA.

¶25     The Court accepts the authority for appellate review of the constitutional challenge proffered in Sedler's reply brief, including *State v. Langley*, No. DA 17-0730 and *State v. Hansen*, 2017 MT 280, 389 Mont. 299, 405 P.3d 625.  Opinion, ¶ 11.  *State v. Langley* was not a published opinion, but a short order dismissing an appeal based on the State's

---

[2] We have also relied upon the holding of the U.S. Supreme Court in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, *he may not thereafter raise independent claims relating to the deprivation of constitutional rights* that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the plea . . . .

*Hagan v. State*, 265 Mont. 31, 35, 873 P.2d 1385, 1387 (1994) (emphasis added).

18

concession to strike a sentencing condition, in which the State explained it was not agreeing with all of Langley's arguments. This order provided no analysis of constitutionality or appellate review. *State v. Hansen* involved a challenge to the sentencing court's authority to receive a *nolo contendere* plea, and we undertook review to enforce the Legislature's prohibition upon such pleas, which was essentially a jurisdictional question. These cases did not involve the procedural posture we face here.

¶26 I acknowledge the Court has inherent authority to undertake review of matters when necessary to preserve the integrity of the judicial process or ensure fundamental fairness, including review of a facial constitutional challenge. The question here is whether it is necessary to do so. The Court has established careful parameters under which we exercise this appellate authority to ensure a fair and orderly judicial process. Here, reaching the constitutional challenge requires bypassing multiple of those parameters, but more critically, rewards the gaming of the judicial system. Sedler gained a benefit from one court, then switched positions to gain a different benefit on appeal, and now has obtained dismissal of all charges against him, including a violent felony offense. Sedler's actions should not be rewarded under the rules governing appellate review, which essentially enforce the doctrine of judicial estoppel in the criminal context. *See Stanley L. & Carolyn M. Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 33, 321 Mont. 432, 92 P.3d 620 ("The doctrine of judicial estoppel binds a party to their judicial declarations and precludes a party from taking a position inconsistent with previously made declarations in a subsequent action or proceeding."). In my view, accepting review of the facial constitutional challenge

19

in these circumstances does not serve to preserve the integrity of the judicial system or the fundamental fairness of the proceeding; indeed, it appears the judicial system as a whole is being played. The possibility that the dismissed charges against Sedler could be refiled does not remedy the result of the Court's action now. I would thus deny the challenge on these ample procedural grounds as a matter of prudence and judicial restraint.

¶27 Turning to the merits of the facial constitutional challenge to the registration statute, I would not strike down the statute on substantive due process grounds.

> The constitutionality of a legislative enactment is prima facie presumed, and every intendment in its favor will be presumed, unless its unconstitutionality appears beyond a reasonable doubt. The question of constitutionality is not whether it is possible to condemn, but whether it is possible to uphold the legislative action which will not be declared invalid unless it conflicts with the constitution, in the judgment of the court, beyond a reasonable doubt.

*Powell v. State Comp. Ins. Fund*, 2000 MT 321, ¶ 13, 302 Mont. 518, 15 P.3d 877 (citations omitted). Here, given the posture of the case, I believe it is possible to uphold the statute.

¶28 Of course, our consideration of the constitutionality of the statute in this case is not based on a factual record. Had this issued been raised in the District Court, evidence could have been offered by all parties regarding the operation of the statute. Instead, the Court makes factual assumptions. *See* Opinion, ¶ 18, n.8 ("The State has the ability to track offenders required to register for commission of new offenses, misdemeanor or felony, similar to how it tracks probationers, parolees, and those under a deferred imposition of sentence."). The Court offers its policy preferences. *See* Opinion, ¶ 18, n.7 ("violent offenders should be required to register for the period of time in which they are most likely

20

to recidivate or re-offend on reliable data regarding violent offender recidivism and re-offense.").

¶29 Regarding substantive due process, we are to strongly defer to the Legislature under a reasonableness review. "[T]he purpose of the legislation does not have to appear on the face of the legislation or in the legislative history, but may be *any possible purpose* of which the court can conceive." *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 34, 353 Mont. 265, 222 P.3d 566 (internal citation omitted) (emphasis added). The Court correctly acknowledges a facial challenge requires that a party demonstrate that there are "no set of circumstances" under the which the statute could be valid. Opinion, ¶ 17.

¶30 Although the Court characterizes the statute as requiring a district court to engage in a "purely ministerial [act]" for which the court "retains no discretion," Opinion, ¶ 18, and we have no factual record to confirm it, I do not believe this would necessarily be true in all cases. The State could oppose termination of registration for a registrant who is charged and tried for a qualifying crime before, but not sentenced until after, expiration of the 10-year registration period, thus requiring a substantive judicial determination of the application of the statute and eligibility for relief. Such timing challenges are not unprecedented. *See State v. Thomas*, 2019 MT 155, 396 Mont. 284, 445 P.3d 777. Or, the parties may dispute an underlying conviction. A defendant who is challenging on appeal another conviction for a qualifying crime when the 10-year period expires may seek release from registration pending the appeal, again requiring substantive judicial review. Such potential interpretational issues justify the process, set forth in § 46-23-506(3)(a), MCA,

21

requiring that a defendant affirmatively petition for relief and that "[t]he petition must be served on the county attorney." Service upon the county attorney serves as an important procedural check so that termination is not ordered in inappropriate cases. If the process was only ministerial, such service would not be necessary. However, allowing the county attorney to review the petition for any objection by the State permits a final confirmation of eligibility before termination of the registration requirement, and thus furthers the SVORA's public safety purposes. While these assumptions could be debated, the point is that, in a facial, substantive due process challenge without a factual record, "any possible purpose of which the court can conceive" is sufficient to justify the challenged statute. *Satterlee*, ¶ 34 (citation omitted).

¶31   I would wait to take up the important question of the constitutionality of the statute when it is properly preserved, and review is properly assisted by a factual record. Here, I would affirm.

/S/ JIM RICE

Justice James Jeremiah Shea, dissenting.

¶32   I dissent from the majority's opinion for the reasons set forth in ¶¶ 21 through 26 of Justice Rice's Dissent. Because I dissent on that basis, I decline to address the merits of the constitutional challenge in this particular case.

/S/ JAMES JEREMIAH SHEA

Justice Baker joins in the Dissenting Opinion of Justice Shea.

/S/ BETH BAKER

22